UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| MELISSA ORIFICI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:08-CV-50074 |
| | ) | |
| GRAY TELEVISION GROUP, INC., | ) | |
| a foreign Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS AND TO COMPEL ARBITRATION

Defendant Gray Television Group, Inc. ("Gray") hereby files this Brief in Support of Its

Motion to Dismiss and to Compel Arbitration.

### I.    INTRODUCTION

The parties in this case entered into a written employment agreement (the "Agreement")

to arbitrate any claims or disputes related to the termination of the Agreement or to Plaintiff's

termination of employment with Gray.  As part of this Agreement, the Parties specifically agreed

that any claims arising under Title VII or the Age Discrimination in Employment Act ("ADEA")

are arbitrable under the Agreement.  Despite Plaintiff's agreement to arbitrate these claims,

Plaintiff filed her Complaint in court alleging violations of both Title VII and the ADEA.

Further, Plaintiff affirmatively invoked the validity of the Parties' Agreement by including a

breach of contract claim which is based on the same Agreement containing the arbitration clause.

Because Plaintiff's purported claims fall within the scope of the Agreement, they are subject to a

valid and binding agreement to arbitrate.  For these reasons, Plaintiff's Complaint should be

dismissed and Plaintiff should be compelled to arbitrate her claims.

## II.    FACTS

On April 9, 2003, Plaintiff entered into an employment agreement with Gray (a copy of the Agreement is attached hereto as Exhibit A)[1] which included an arbitration clause stating that "any claims or disputes ... arising out of the termination of this Agreement or the termination of Plaintiff's employment shall be resolved by arbitration administered by the American Arbitration Association."  (Agreement at ¶7).  The Agreement also provided that "[t]he agreement to arbitrate shall apply to all claims . . . including but not limited to any and all claims, actions or causes of action, arising under any state, local or federal law dealing with employment, employment discrimination, or employment compensation or benefits, including but not limited to the Civil Rights Act of 1964 including Title VII of such act [and] the Age Discrimination in Employment Act. . . ."  (Agreement at ¶7).

According to Plaintiff, her employment with Gray was terminated on or about July 31, 2006.  (Pl.'s Complaint at ¶9).  Ten months later, in May 2007, Plaintiff filed a Charge of Discrimination with the EEOC.  (Pl.'s Complaint at ¶3).  In her Charge, Plaintiff alleged that Gray discriminated against her on the basis of her sex and age and retaliated against her in violation of Title VII and the ADEA.  (Pl.'s Complaint at ¶3, Ex. A).

On April 28, 2008, Plaintiff filed this action alleging that Gray discriminated against her based on her age and sex, in retaliation for her opposition to age and sex discrimination, and in violation of the Agreement.  (Pl.s Complaint, Counts I-IV).  This case arises directly from the termination of Plaintiff's employment as well as the terms of the Agreement, which Plaintiff contends Gray breached.  (See Pl's Complaint, Count V).  Because this dispute arises out of and

---

[1] Plaintiff inadvertently neglected to attach the Agreement to her Complaint but did attach it to Plaintiff's Motion for Amended Complaint.

relates to the Agreement and its alleged breach, Plaintiff must arbitrate this dispute under the express terms of the Agreement, and may not proceed with litigation in this forum.

### III.　ARGUMENT

The arbitration provision is valid and enforceable under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., which manifests a strong public policy in favor of enforcing written agreements to arbitrate. Plaintiff's attempt to litigate this dispute in violation of the mandatory arbitration provision to which she agreed is contrary to binding federal law. Under the Federal Arbitration Act, this Court has the authority and the duty to enforce the Agreement's mandatory arbitration provision and compel Plaintiff to submit all claims in this action to arbitration. See 9 U.S.C. §§ 2, 4. Further, under Illinois law, Plaintiff's entire case is arbitrable because: (1) there is a valid and binding agreement to arbitrate, (2) all of Plaintiff's claims fall within the scope of the agreement, and (3) Gray has not waived its right to arbitrate. See Bauer v. Morton's of Chicago, 2000 U.S. Dist. LEXIS 1453, *4-5 (N.D. Ill. Feb. 9, 2000); Nieminski v. John Nuveen & Company, Inc., 1997 U.S. Dist. LEXIS 764, *7 (N.D. Ill. Jan. 23, 1997). Accordingly, this Court should enter an Order compelling Plaintiff to submit her claims to binding arbitration in accordance with the arbitration provision contained in the Agreement.

### A.　**Federal Policy Favors Arbitration**

The Federal Arbitration Act ("FAA") provides that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has construed the FAA as establishing a liberal policy in favor of arbitration. EEOC v. Waffle House, 534 U.S. 279, 289 (2002). Therefore, courts must uphold the policy behind the FAA whenever possible by rigorous enforcement of arbitration agreements. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221

(1985). In addition, courts should "move the parties to arbitrate disputes out of court and into arbitration as quickly and easily as possible." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 22 (1983). Courts have consistently held that any doubts about the scope of arbitrable issues must be resolved in favor of arbitration. See Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). The heavy presumption in favor of arbitration is based upon public policy considerations for speedy and efficient decisions "not subject to delay and obstruction in the courts." Prima Paint Corp. v. Flood and Conklin Mfg., Co., 388 U.S. 395, 404 (1967). The Supreme Court has also ruled that when a matter is subject to arbitration, the FAA "leaves no place for the exercise of discretion by a district court but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Byrd, 470 U.S. at 218 (emphasis in original).

The Supreme Court has repeatedly recognized that federal and state statutory claims can be appropriately resolved through arbitration and has enforced agreements to arbitrate such claims. Greentree Financial Corp.-Ala. v. Randolph, 531 U.S. 79 (2000). "[E]ven claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions." Greentree Financial, 531 U.S. at 90 (citations omitted). The Supreme Court has steadfastly held that arbitration is a viable and enforceable alternative to litigation of employment discrimination claims asserting violation of federal statutory claims. Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) (federal age discrimination claim subject to mandatory arbitration). In that context, having made the bargain to arbitrate, the parties should

4

be held to it unless "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Greentree Financial, 531 U.S. at 90.

**B.    Plaintiff Is Bound By A Valid And Enforceable Arbitration Agreement**

Like Federal law, Illinois law favors enforcing arbitration clauses. Maroney v. Triple R. Steel, Inc., 2005 U.S. Dist. LEXIS 30576, *6 (N.D. Ill. Aug. 11, 2005). The party opposing arbitration is required to demonstrate that the clause is unenforceable. Maroney, 2005 U.S. Dist. LEXIS 30576 at *4. Here, Plaintiff's entire case is arbitrable because there is a valid and binding agreement to arbitrate, all of Plaintiff's claims fall within the scope of the agreement, and Gray has not waived its right to arbitrate. See Id. at *4-5.

**1.    Plaintiff knowingly and voluntarily agreed to arbitrate.**

An enforceable agreement to arbitrate exists between Plaintiff and Gray. In order to overcome the FAA's presumption in favor of arbitration, Plaintiff must provide facts to the Court that demonstrate that she did not knowingly and voluntarily agree to the arbitration clause. Maroney, 2005 U.S. Dist. LEXIS 30576 at *7-8. This she cannot do. Instead, as part of negotiating a new four-year contract with Gray, Plaintiff signed an agreement to arbitrate. Moreover, the facts pled in Plaintiff's Complaint make clear that Plaintiff entered into the Agreement intending to be bound by the contractual duties under the Agreement. (See Pl.'s Complaint, Count V). This evidence demonstrates Plaintiff's clear intent to enter into the Agreement and arbitrate any potential claims, rather than resolve them in this forum.

**2.    All of Plaintiff's claims are subject to the Agreement's arbitration clause.**

Second, Plaintiff agreed to arbitrate the specific claims presented in her Complaint. The Agreement's arbitration clause states that all claims and disputes arising out of the "termination of this Agreement or the termination of Employee's employment" are subject to arbitration – and

specifically states that claims dealing with "employment discrimination," including those under Title VII and the ADEA, will be resolved by arbitration.   By entering into this agreement, both Plaintiff and Gray waived their rights to pursue these claims in court.  As a result, all five counts of Plaintiff's Complaint – based on Title VII, the ADEA, and breach of contract – are arbitrable and it is proper for the Court to dismiss this case. See Bauer, 2000 U.S. Dist. LEXIS 1453 at *7-8 (dismissing plaintiff's Title VII claim as falling within the scope of an arbitration agreement); Mandel v. SCI Illinois Servs., Inc., 2003 U.S. Dist. LEXIS 13408 (N.D. Ill. Aug. 1, 2003) (dismissing plaintiff's ADEA claim and compelling arbitration).

3.    **Gray has not waived its arbitration rights.**

Finally, Gray has not waived its right to arbitration, either explicitly or by implication. Instead, by filing this Motion to Dismiss and to Compel Arbitration, Gray has demanded arbitration in a timely manner. See Scaffidi, 218 Fed. Appx. at 522 (ruling that party's motion to compel arbitration filed less than two months following plaintiff's complaint belies any implied waiver argument).   Once Plaintiff filed her Complaint, Gray did not delay in raising the Agreement's arbitration clause and, consequently, Gray has not waived its right to arbitration. Therefore, all the elements necessary for Plaintiff's claims to be arbitrable have been met.

C.    **Plaintiff's Case Should Be Dismissed**

Because all of Plaintiff's claims against Gray are covered by the Agreement's arbitration clause, and therefore subject to arbitration, it is proper for this Court to dismiss Plaintiff's entire case. See Washek, 2005 U.S. Dist. LEXIS 13684 at *8-9 (ruling that, where a plaintiff's claims are subject to arbitration, it is proper to dismiss rather than stay a plaintiff's case); Bauer, 2000 U.S. Dist. LEXIS 1453 at *9 (granting employer's motion to dismiss plaintiff's gender discrimination and retaliation claims); Nieminski, 1997 U.S. Dist. LEXIS 764 at *1 (granting

party's motion to dismiss and to compel arbitration).

## IV.  CONCLUSION

There is no dispute that Plaintiff and Gray entered into a written agreement which included an arbitration clause.  Likewise, there is no dispute regarding the arbitrability of Plaintiff's statute-based employment claims and breach of contract claim.  Because all of Plaintiff's claims are subject to a valid and enforceable arbitration agreement, Gray respectfully requests that this Court dismiss Plaintiff's Complaint and permit the parties to undertake the arbitration that the parties are bound to follow.

This 23rd day of June, 2008.

/s/Robert M.O'Connell
Robert M. O'Connell, Esq.
State Bar No. 2085569
Speranza & Bates
1401 N. Western Avenue
Lake Forest, Illinois  60045
Phone:  847-615-1090
Fax:      847-615-1096

*Pro Hac Vice to be applied for*
Robert H. Buckler
Georgia Bar No. 92650
bobby.buckler@troutmansanders.com
Michael D. Kaufman
Georgia Bar No. 409195
mike.kaufman@troutmansanders.com
Lindsay S. Marks
Georgia Bar No. 636480
lindsay.marks@troutmansanders.com

TROUTMAN SANDERS LLP
Bank of America Plaza, Suite 5200
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404)885-3000 (phone)
(404)962-6778 (facsimile)

Counsel for Defendant Gray Television Group, Inc.

# DEFENDANT'S EXHIBIT A

# PLAINTIFF'S EMPLOYMENT AGREEMENT

THIS DOCUMENT IS ALSO ATTACHED
TO THE
FIRST AMENDED COMPLAINT
AS
PLAINTIFF'S EXHIBIT C

## EMPLOYMENT AGREEMENT

The Employment Agreement ("Agreement") is made by and between **GRAY MID AMERICA TELEVISION, d/b/a WIFR-TV** (the "Company"), and Melissa Murphy (the "Employee").

In consideration of the mutual promises and covenants set forth in the Agreement, the sufficiency of which is acknowledged, the Company agrees to employ Employee, and Employee agrees to provide services to the Company, upon the following terms and conditions:

1. **Term of Employment**. The Company employs Employee, and Employee agrees to render broadcast services for the Company pursuant to the terms and conditions set forth in this Agreement, for a four (4) year term commencing on May 4, 2003, and ending on May 3, 2007, subject to earlier termination as provided below.

2. **Employee's Duties**.

(a)    Employee agrees to perform all duties and responsibilities of a 5, 6 and 10pm News Anchor, as assigned by the News Director; and to perform any other duties as may be reasonably required by the Company. The Company would also like you to continue with Medical Breakthroughs, and to allow us to showcase the franchise by calling it "Mimi Murphy's Medical Breakthroughs". The Company reserves the right to reassign Employee during the term of this Agreement, as it deems appropriate.

(b)    The services furnished by Employee under this Agreement shall be subject at all times to the Company's reasonable direction and control. Employee expressly acknowledges that programming decisions, including but not limited to decisions with respect to the addition or deletion of program material, are solely within the discretion of the Company.

(c)    Employee agrees to perform all services to the best of her ability, and at all times to perform in a competent, careful, artistic manner. The services furnished by Employee, including but not limited to services in connection with any written material, will comply with the programming and ethical standards of the Company, and with the applicable rules and regulations of the Federal Communications Commission and all other federal, state and governmental authorities.

(d)    Employee agrees to devote her full professional time, skill and abilities to the performance of her duties to the Company. Employee also agrees that she will promptly and faithfully do and perform all services that are or may be reasonably required of her by the Company during the term of this Agreement.

(e)    Employee shall be based at the Company's facilities in Winnebago County, Illinois, but may be required to furnish services outside the area or at remote locations as the Company may from time to time direct.

# EXHIBIT C

**3.** **Compensation and Benefits.** For all services provided by Employee pursuant to the Agreement, the Company will provide the following compensation and benefits:

(a)　The Company agrees to pay Employee:

$75,600 in Employee's first year of service;
$81,270 in Employee's second year of service;
$87,365 in Employee's third year of service; and
$93,317 in Employee's fourth year of service

The above amounts will be subject to the usual deductions for federal, state and local taxes, and will be paid in accordance with the Company's regular payroll practices.

(b)　In addition, Employee will receive a $2, 000 signing bonus to be paid over four (4) months, starting in May, 2003 and ending in August, 2003.

(c)　Employee shall be entitled to participate in all fringe benefit programs (including health insurance, vacation, short term disability, etc.) which are provided by the Company from time to time for similarly-situated employees. Employee's benefits will be provided in accordance with the terms and conditions of the applicable plan or program. In addition, with prior consent from the News Director, Employee shall granted twenty-six (26) Friday night 10pm newscasts off a year. However, these 26 cannot fall during sweeps or on the Friday after sweeps.

(d)　Employee will receive three (3) weeks vacation through the length of this contract.

(e)　Employee will receive a $6000 per year clothing trade arrangement or allowance to be used at a clothing store(s) of the Company's choosing. If a suitable trade cannot be arranged, a cash allowance of $3,000 for clothing will be paid annually.

(f)　Employee will receive a $250 per month car allowance. All car allowances will be added to total compensation and taxed accordingly.

(g)　The Company agrees to reimburse Employee for any expenses incurred in the course of her employment which have been approved in advance by an authorized representative of the Company. Reimbursement is also subject to receipt of required documentation of the expense incurred.

**4.** **Exclusivity of Performance.**

(a)　Employee agrees not to engage in any other trade, business or occupation that will interfere with her obligations to the Company as described in this Agreement.

-2-

(b)     The exclusive rights to any recordings made by, for or of Employee, whether by motion picture film, kinescope, electrical transcription, tape or otherwise, which is capable of being used or is currently being used by the Company in connection with any promotion, sale, reference, broadcast, exhibition or reception, or otherwise, are vested in the Company, or in such person or entity as the Company may direct, without additional compensation to Employee.

(c)     Employee will not render any media-related services to any person or entity other than the Company without the prior written consent of the Company.

(d)     Employee agrees not to perform services, to authorize or permit the use of her name or likeness, or to make personal appearances in connection with services performed for or by any other company, business or interest, which conflicts with the full and faithful performance of Employee's duties for the Company, without the prior written consent of the Company.

(e)     Employee will not prepare or provide, for publication by persons or entities other than the Company, information or materials that associates or identifies Employee with the Company, and Employee will not authorize or permit the use of Employee's name or likeness in connection with the advertising of any product or service, without the prior written consent of the Company.

5.     **Termination of Agreement.** The Company may terminate the Agreement at any time, with or without cause, by providing written notice to Employee. In the event of the termination of the Agreement, the Company will pay Employee her salary and benefits through the effective date of termination; provided, however, that any annual benefits (such as vacation, clothing allowances, etc.) will be prorated through the effective date of termination.

> The Company may terminate the Agreement, with or without cause, by giving Employee at least 90 days' prior written notice. The Company shall have the right to relieve Employee of her duties pending the effective date of termination, but shall be required to continue to pay Employee her salary and benefits until the effective date of termination.

Employer agrees to terminate this Agreement if Employee accepts on on-air job in a television market with a DMA ranking of 50 or higher. As soon as she is notified, she will inform the Employer that she is a finalist for a job in a market with a DMA ranking of 50 or higher, with a minimum of 60 days notice required.

6.     **Obligations Upon Disability.** In the event Employee becomes unable, with reasonable accommodation, to satisfactorily perform the essential functions of her position, due to accident, illness or other incapacity, the Company shall provide salary continuation and disability benefits in accordance with the terms and conditions of its

disability policies and plans in effect on the date of disability; but shall have no further obligation under this Agreement.

　　　　7.　　**Resolution of Disputes Regarding Termination.**　Any claims or disputes between the parties arising out of the termination of this Agreement or the termination of Employee's employment, shall be resolved by arbitration administered by the American Arbitration Association (the "AAA") under its National Rules for the Arbitration of Employment Disputes (the "Rules"), and judgment on the award may be entered in any court having jurisdiction.　In applying the AAA's Rules, the following shall apply:

　　　　(a)　　The claims and disputes shall be resolved by one arbitrator, who will be selected in accordance with the AAA's Rules.　The arbitrator's award shall include the findings of fact and conclusions of law on which her award is based.

　　　　(b)　　Except where statutory rights are involved, Employee and the Company agree to submit to arbitration any claims or disputes subject to arbitration under the paragraph within thirty (30) calendar days of the effective date of termination of Employee's employment, and expressly waive any statute of limitation to the contrary. Where statutory rights are involved, the claim or dispute must be submitted to arbitration within the time limit established by the applicable statute.　A claim or dispute shall be deemed submitted to arbitration on the date that a Demand for Arbitration is filed with the AAA.

　　　　(c)　　The arbitration hearing, and any Arbitration Management Conference, preliminary shearing or mediation conference shall be conducted in the county in which the facility of the Company at which Employee last worked is located.

　　　　(d)　　The parties shall confer regarding discovery needed by them and, if they cannot agree, each party shall be entitled to call a preliminary hearing in accordance with the Rules to establish, among other things, the extent of and a schedule for the production of relevant documents and other information, (2) the identification of any witnesses to be called, and (3) a schedule for further hearings to resolve the dispute.

　　　　(e)　　Each party shall bear its own costs of arbitration, including all arbitrator fees, filing fees and administrative costs, and attorney's fees; provided, however, if the claim to be arbitrated is made under a statute or law which expressly allows for an award of attorney's fees to the prevailing party, the arbitrator may make such an award to the prevailing party on the claim to extent allowed by the statute or law.

The agreement to arbitrate shall apply to all claims arising out of the termination of this Agreement or the termination of Employee's employment with the Company, including but not limited to any and all claims, actions or causes of action, arising under any state, local or federal law dealing with employment, employment discrimination or employment compensation or benefits, including but not limited to the Civil Rights Act of 1964 including

-4-

Title VII of such Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, and the Employee Retirement Income Security Act; provided, however that the agreement to arbitrate shall not apply to actions to enforce any restriction on competition contained in the Agreement, or to claims for unemployment compensation or workers' compensation.

8.    **Restriction on Competition.**

(a)    Employee recognizes and agrees that the services to be performed by Employee are extraordinary and unique and that, accordingly, the injury the Company will suffer in the event of breach by Employee will cause the Company irreparable injury which cannot be adequately compensated by monetary damages alone. Therefore, in the event of any such breach, or any attempted or threatened breach, the Company shall be entitled to seek equitable relief by injunction or otherwise from a court of competent jurisdiction.

9.    **Applicable Law; Severability**. The Agreement shall be subject to and construed under the laws of the State of Illinois. The language of all parts of the Agreement shall be construed as a whole according to its fair meaning. If any portion of the Agreement is determined to be unenforceable, such determination shall not affect the enforceability of the remainder of the Agreement, which shall remain in full force and effect.

10.    **Assignment**. The Agreement requires personal services of Employee and Employee's rights and/or obligations under the Agreement may not be assigned or delegated to any third party. The Company may assign its rights and delegate its obligations under the Agreement to any entity which is an affiliate or the successor in interest of the Company. For purposes of the Agreement, an "affiliate" shall be any entity which controls, is controlled by or is under common control with the Company.

11.    **Successors**. The Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, administrators, executors, successors and permitted assigns.

12.    **Notices**. All notices required or permitted under the Agreement shall be in writing and shall be deemed to have been duly given when personally delivered or deposited in the United States mail, registered or certified, postage and fees prepaid and return receipt requested, to the parties addressed as follows (or at such other addresses as designated by the parties from time to time):

**If to Employee:**

Melissa Murphy                    11199 Shaw Road
                                  Rockford, IL 61114

**If to the Company** :            **With a copy to**:
WIFR-TV                           Gray Mid America Television
Attn: Greg Graber
2523 N. Meridian Rd.
Rockford, IL  61101

or at such other address as shall have been furnished in writing to the other party initiating such notice.

**13.    Entire Agreement; Amendment**.  This Agreement contains the entire agreement between the parties concerning the subject matter of the Agreement and there are no other agreements, obligations, or representations, oral or written, of any kind whatsoever.  No amendment or alteration of this Agreement shall be valid or enforceable unless made in writing and signed by both parties.

**14.    Confidentiality**.  The terms and conditions of this Agreement are to be held in the strictest of confidence by Employee.  Breach of this confidentiality shall, at the option of the Company, result in immediate termination of this Agreement. .

To evidence their agreement, the parties have executed this Agreement on the date set opposite to their signatures below.

_____4/9/03_____
Date

_____4/9/0S_____
Date

**GRAY MID AMERICA
TELEVISION - WIFR-TV,**

BY:  _____
     Greg Graber, V.P./General Manager

BY:  _____
     Melissa Murphy/Employee

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MELISSA ORIFICI, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CASE NO. 3:08-CV-50074** |
| | ) | |
| GRAY TELEVISION GROUP, INC., | ) | |
| a foreign Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing **DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND TO COMPEL ARBITRATION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Counsel for Plaintiff: John Rearden Jr., Debra Ann Delia, and Timothy A. Miller.

This 23rd day of June, 2008.

/s/ Robert M. O'Connell
Counsel for Defendant

Robert M. O'Connell
ARDC # 2085569
Speranza & Bates
1401 North Western Avenue
Lake Forest, Illinois 60045
847-615-1090 (Phone)
847-615-1096 (Fax)